J-A27021-18

2020 PA Super 20

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
KATRINA A. SANDERS :
:
Appellant : No. 3562 EDA 2017

Appeal from the Judgment of Sentence July 17, 2017
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003929-2016

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

DISSENTING OPINION BY McLAUGHLIN, J.: **FILED FEBRUARY 3, 2020**

Katrina A. Sanders admitted at trial that she was well aware of the significant risk that she could hit a pedestrian when driving a bus, especially a tandem bus such as she was driving on the day in question. N.T, 1/3/17, at 215, 217, 222. Yet on-board cameras captured her distractedly fiddling with papers for 45 seconds while stopped at the subject intersection, and not looking for traffic or pedestrians, until shortly before she struck and killed the victim. *Id.* at 99. Sanders conceded that the victim was clearly visible during that 45 seconds in recordings taken by the on-board cameras, but said she did not see him on the day in question until he was directly in front of her bus. *Id.* at 219, 221. The prosecution's expert made it clear that Sanders' view from the driver's seat was unobstructed and those 45 seconds gave her ample opportunity to look for pedestrians, such as the victim. Yet despite knowing

the risk and having plenty of time to look, she instead was examining the papers in her hand. *Id.* at 98, 100.

Sanders also admitted on the record that at the time of the victim's death, she was fully aware of a safety rule requiring her to stop and look for a full four seconds before making a left turn. She conceded that the rule existed because of the heightened risk that the driver of a tandem bus would not see a pedestrian in a crosswalk when executing a left turn. *Id.* at 225-226. Yet once again, the videos document her failure to obey that rule, which was in place specifically to protect against hitting a pedestrian in a crosswalk, when she turned left and hit and killed the victim.

Based on this record, I believe the evidence was enough to establish that Sanders consciously disregarded a known risk. The trial judge saw the videos and heard all the testimony. He could reasonably conclude that although Sanders knew the significant risks of hitting and even killing pedestrians when turning a tandem bus left, she nonetheless was looking at papers, and not into the intersection, for 45 seconds while stopped at the intersection. Once the light turned green, the evidence shows, Sanders failed to wait long enough to ensure there were no pedestrians in the path of her bus before she turned, despite knowing the risk. As a result of her failures, she struck and killed the victim. I therefore respectfully dissent.

The Majority accurately sets forth the law as to sufficiency of the evidence. To support a conviction for homicide by vehicle, the Commonwealth must prove that the defendant caused the death of another, recklessly or with

gross negligence, while violating a law or municipal ordinance "applying to the operation or use of a vehicle or to the regulation of traffic except [75 Pa.C.S.A. §] 3802," and that the violation caused the death. 75 Pa.C.S.A. § 3732(a); **Commonwealth v. Pedota**, 64 A.3d 634, 636 (Pa.Super. 2013). Here, there is no dispute that Sanders violated vehicle or traffic laws, or that the collision caused the victim's death. The Majority, however, finds the Commonwealth failed to establish that Sanders recklessly or with gross negligence caused the victim's death. I disagree.

Here, the trial court explained why it believed the evidence was sufficient to prove that Sanders acted recklessly or with gross negligence:

> [T]he evidence showed that the Defendant operated her bus in a grossly negligent or reckless manner. Specifically, the evidence adduced at trial indicated that: 1) [Sanders] was a professional driver with 20-30 years' experience; 2) [Sanders] was aware of the risks involved in driving professionally, especially a 62 foot tandem bus; [3]) [Sanders] stopped her bus in the cross walk perpendicular to where the victim was crossing; [4]) she was looking at route paperwork while stopped at the light for approximately 45 seconds, during which time nothing impeded her view of the victim waiting the cross the street; [5]) she briefly checked the intersection before moving, in violation of written SEPTA policy requiring a four second hesitation before turning; and [6]) she failed to see the pedestrian, who had the right of way and was in a marked crosswalk, until she struck him. [Sanders] was a professional driver and grossly deviated from the standard of conduct that a similarly qualified driver would have exercised. Therefore, the evidence was sufficient to support her conviction for homicide by vehicle.

Trial Court Opinion, filed 5/29/18, at 8-9 ("1925(a) Op.").

The evidence was sufficient to support the trial court's conclusion. Sanders testified at trial that she was acutely aware of the heightened risk of hitting a pedestrian when turning a tandem bus left and that the four-second rule served to mitigate that risk. The potential for such a large vehicle to kill a pedestrian is obvious. Yet the videos nevertheless showed Sanders reviewing the papers instead of being alert to her surroundings, failing to scan the area fully before turning, and failing to follow a rule designed to ensure no pedestrians were in her path. The evidence here was sufficient to establish her conscious disregard of a substantial and unjustifiable risk, *i.e.*, criminal recklessness. **See Commonwealth v. Moyer**, 171 A.3d 849, 854 (Pa.Super. 2017) (concluding evidence supported homicide by vehicle conviction premised on failure to stop at stop sign, where defendant only slowed to 12 miles per hour for two seconds prior to impact, stop sign preceded a busy cross street, building obscured view of one lane of cross traffic, and defendant was familiar with the intersection and had driven through it many times).

I respectfully submit that both the Majority Opinion and the Concurring Opinion improperly reweigh the evidence in concluding otherwise. Respectfully, in my view, the approaches my colleagues espouse violate our standard of review. When considering a sufficiency challenge, what we may not do is re-weigh the evidence and substitute our judgment for that of the fact-finder. **Commonwealth v. Rogal**, 120 A.3d 994, 1001 (Pa.Super. 2015). Rather, if the Commonwealth has presented evidence of each element of the crime, the evidence is sufficient unless it is "so weak and inconclusive that as

- 4 -

a matter of law no probability of fact may be drawn from the combined circumstances." ***Commonwealth v. Bradley***, 69 A.3d 253, 255 (Pa.Super. 2013).

While the Majority acknowledges our standard of review, respectfully, in my view, it fails to abide by it, as does the Concurring Opinion. Neither of my colleagues concludes that the evidence was "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." In my view, each fails to view the evidence in the light most favorable to the Commonwealth, as verdict winner, and instead improperly evaluates the evidence and assigns it the importance it deems proper.

In violation of the standard of review, the Majority reviews the evidence and assigns it the significance the Majority finds appropriate, to conclude that "[i]t is simply out of proportion to classify" Sanders' waiting 2.33 seconds, instead of the full four seconds, as recklessness or gross negligence. Majority Opinion at 11. Rather, in the Majority's opinion, Sanders' failing in this regard only amounted to a "relatively minor infraction." Similarly, the Concurring Opinion examines Sanders' actions and decides that although her conduct was "a deviation from the standard of conduct of a reasonable person," it did not rise to the level of a "gross deviation." Concurring Opinion at 2, 3. The Concurring Opinion bases that view on its appraisal of Sanders' conduct – her "review of the paperwork while stopped, the position of the bus over the stop line, the initiation of the left-hand turn after waiting only 2.33 seconds, and the papers held in her left hand while turning…." ***Id.*** at 3.

Respectfully, such assessments are inherently subjective judgments and no proper part of a sufficiency review. The subjectivity of my colleagues' view is evident in their agreement that "[t]he circumstances of this case do not suggest the level of brazenness or hard-heartedness characteristic of acts of recklessness." Majority Opinion at 13; Concurring Opinion at 4. Neither the Majority Opinion nor the Concurring Opinion cite any authority for the proposition that criminal recklessness requires a finding of "brazenness" or "hard-heartedness," and I am aware of none. Respectfully, such descriptors are more at home in the classic definition of malice, which Pennsylvania courts have often termed as "a wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty...." **Commonwealth v. Reilly**, 549 A.2d 503, 510 (Pa. 1988) (quoting **Commonwealth v. Drum**, 58 Pa. 9, 15 (1868)). They have not appeared heretofore in a definition of criminal recklessness, and I thus believe my colleagues are employing an incorrect substantive standard. **See Moyer**, 171 A.3d at 853-54 (explaining that malice standard does not apply to homicide by vehicle).

Moreover, I cannot say that I, as an appellate judge, know better than the fact-finder the significance of, for example, the driver of a tandem bus waiting and looking for pedestrians for only 2.33 seconds, instead of four seconds. Nor is it for me, as an appellate judge, to decide whether doing so amounts to a gross or ordinary deviation from the standard of conduct. Rather, when confronted on appeal with a sufficiency challenge, we ask

whether there was evidence beyond a reasonable doubt to support the fact-finder's determination that the evidence met every element of the crime charged. *See Bradley*, 69 A.3d at 255.

With respect, the Majority's conclusion that Sanders "simply did not see the victim at any point prior to moving" the bus demonstrates the Majority's error. Majority Opinion at 10. Respectfully, the issue is *why* Sanders failed to see the victim in time. Here, the prosecution put evidence before the trial court that Sanders did not see him until it was too late because she violated safety rules that she admitted she not only knew existed, but also was aware served to prevent just the sort of tragedy that occurred here. It is not for this Court to review the evidence and decide for ourselves if Sanders "simply" and faultlessly "did not see the victim," or to decide whether, on balance, the verdict was "out of proportion" to the evidence. *Id.* at 10, 11. Instead, as long as the prosecution presented evidence of every element of the crime, we affirm unless the evidence was too insubstantial to support any finding of fact. *See Bradley*, 69 A.3d at 255.

Tellingly, neither of my colleagues concludes that the evidence here was "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances," and I do not see how such a conclusion would be supportable. SEPTA safety rules in evidence here require the driver of a stopped bus "to follow the four-second rule that gives the operator/employee an opportunity to scan the area in front of the bus before moving." Commonwealth Ex. 8. Sanders admitted on the stand that she knew

not only of the rule, but also of its purpose of protecting against her not seeing a pedestrian in the crosswalk, and thus hitting the pedestrian while turning left. Yet she also admitted that she failed to follow the rule, when she was executing a left turn. That was enough evidence to prove recklessness or gross negligence.

The Majority counters that "[e]very driver knows that there is a risk of hitting a pedestrian while driving a vehicle and knows that she must look carefully before turning into an intersection to reduce the risk of striking a pedestrian, yet failure to follow these principles does not automatically constitute homicide by vehicle." Majority Opinion at 15. That response demonstrates a fundamental misunderstanding of my position.

Respectfully, it goes without saying that hitting and killing a pedestrian in such commonplace circumstances as the Majority describes does not automatically constitute homicide by vehicle. My difference with the Majority relates to the specific evidence in this case. That evidence includes the expert testimony that Sanders could have seen the victim if she had only looked into the intersection during the 45 seconds she was stopped. It also includes Sanders' testimony about her awareness of the particular risk of striking pedestrians while driving a tandem bus and of SEPTA safety rules intended to mitigate that risk, and that she knowingly failed to abide by those rules.

Judge Bowes in her Concurring Opinion responds that my "position appears to be inconsistent with this Court's recent sufficiency review in **Commonwealth v. Hoffman**, 198 A.3d 1112, 1119-20 (Pa.Super. 2018)

(McLaughlin, J.)." Concurring Opinion at 4 n.1. She claims that her analysis is in line with cases such as **Commonwealth v. MacArthur**, 629 A.2d 166, 168-69 (Pa.Super. 1993). Respectfully, the Concurring Opinion appears to misunderstand **Hoffman** and **MacArthur**. In both of those cases, we found the evidence insufficient because there was a lack of evidence, not because we thought the evidence was not weighty enough to warrant a conviction.

For example, in **Hoffman**, the Commonwealth presented evidence that the defendant had taken sleep-inducing medications, fell asleep on a couch, and later rolled off the couch and onto an infant on the floor next to her, suffocating the child. 198 A.3d 1119. We concluded that such evidence was not enough to establish malice, and thus support convictions for third-degree murder and aggravated assault. We explained that "the Commonwealth had failed to provide evidence that, by taking the medication, [the defendant] consciously disregarded an extremely high risk that her actions would result in" the child's death. **Id.** We likewise rebuffed the Commonwealth's argument that the jury could have found malice based on the defendant's alleged delay in seeking emergency help. We explained that there was "no evidence" of how long the defendant knew the infant had stopped breathing before she called 911. **Id.** at 1120.

We also turned aside in **Hoffman** a claim that inconsistencies in the defendant's various statements to police showed her consciousness of guilt, as supporting a finding of malice. We pointed out that there was "no evidence" of the crime for which she felt guilty or that she had "anything more than a

general sense of responsibility for the infant's death." *Id.* We rejected the additional claim that the jury could have found malice based on a finding of intentional conduct. We explained that "[a]t no time" did the Commonwealth present evidence that the defendant had acted intentionally, but rather had presented evidence of only an unintentional accident. *Id.* at 1120.

In *MacArthur*, there was similar lack of evidence of malice. There, the defendant pushed a much larger man, who then flipped backwards over a railing, fell down five steps, and landed on the back of his neck, resulting in his death. 629 A.2d at 168. We cited a line of cases holding that a single blow, without more, is insufficient to establish malice, and thus third-degree murder. We then explained that there was "nothing in the record" in that case to provide the necessary "more." *Id.* at 169.

This case is very different from *Hoffman* and *MacArthur*. In this case, there was affirmative evidence that Sanders consciously disregarded a substantial and unjustifiable risk. Sanders herself testified that she knew of the marked risk of death to pedestrians while turning a tandem bus, and that she was aware of safety rules that she admitted were designed to reduce that risk. The risk of death to the pedestrian in such an accident is patent. Yet the evidence nonetheless showed her disregarding that risk and disobeying the safety rules. That is plain evidence of criminal recklessness, and is sufficient to support a conviction for homicide by vehicle. I respectfully dissent.