J-E01002-21

2021 PA Super 163

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| KATRINA A. SANDERS | |
| Appellant | No. 3562 EDA 2017 |

Appeal from the Judgment of Sentence entered July 17, 2017
In the Court of Common Pleas of Montgomery County
Criminal Division at No: CP-46-CR-0003929-2016

BEFORE: PANELLA, P.J., BENDER, P.J.E., LAZARUS, J., STABILE, J., DUBOW, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., and KING, J.

OPINION BY STABILE, J.: **FILED AUGUST 16, 2021**

Appellant, Katrina A. Sanders, appeals from her judgment of sentence of five years' probation for homicide by vehicle, careless driving, careless driving—unintentional death, failure to yield the right-of-way, and improper turning movement.[1] While driving a bus in the scope of her employment with Southeastern Pennsylvania Transportation Authority ("SEPTA"), Appellant struck and killed a 93-year-old pedestrian as he crossed the street. We hold that the evidence is insufficient to sustain Appellant's conviction for homicide by vehicle because the evidence does not support a finding of recklessness or gross negligence. Accordingly, we reverse Appellant's conviction for homicide by vehicle and remand for resentencing on all remaining convictions.

---

[1] 75 Pa.C.S.A. §§ 3732, 3714(a), 3714(b), 3112, and 3334, respectively.

The trial court recounted the evidence as follows:

On April 2, 2016, Officer Floriendo of the Cheltenham Police Department responded to the report of a fatal accident at the intersection of Glenside Avenue and Limekiln Pike in Cheltenham, Montgomery County. Upon arriving at the scene, the officer observed the ninety-three year old victim underneath []a SEPTA bus. Another motorist, who was behind the SEPTA bus in the westbound lane of Glenside Avenue at the time of the accident, testified that as the bus began to make a left-hand turn onto Limekiln Pike, she observed an elderly man begin to cross Limekiln Pike from west to east. The man put his hand up, and then vanished from her sight. She testified that the bus was making a slow, methodical turn. While she was stopped at the light, prior to the bus moving, she did not see the man standing on the corner.

Officer Joseph Morrisey, Jr., was in charge of the investigation and of the crash scene. Morrisey also testified as an expert in crash reconstruction. On the day of the accident, he observed the victim under the SEPTA bus. He testified that in the area of the crash, Limekiln Pike runs north and sou[th], and Glenside Avenue runs east and west. The intersection of these roads is controlled by a traffic signal and there are four designated, marked crosswalks.

He was present for the autopsy of the victim, which indicated that the 93 year old man died of multiple injuries to the trunk and related fractures. Morrisey was present for a mechanical inspection of the bus, which revealed no defects or issues that could have contributed to the crash. As a result of his investigation, Officer Morrisey determined that speed, roadway conditions, weather, or obstructed vision were not contributing factors in the crash.

Officer Morrisey reviewed the Rules Manual for the Surface Transportation and Bus Division from SEPTA, as well and surveillance video taken from inside of the bus. The surveillance video, which depicts the driver's view looking out the front windshield of the bus as well as a view of the driver taken from behind, shows [Appellant] picking up and looking at papers as she is stopped at the light. As a result of this distraction, she stopped over the white stop line, in the crosswalk. As a result, Officer Morrisey opined, she may not have been able to see the victim on the diagonal corner waiting to cross. The video shows that

- 2 -

[Appellant] had an unobstructed view of the intersection for 45 seconds, at which time the victim is visible in the video. During those 45 seconds, [Appellant] was preoccupied with the papers in her hand and did not scan the intersection for pedestrians or other traffic hazards. At the time she begins the turn, there are no other vehicles or pedestrians in the intersection. Before beginning her turn, [Appellant] hesitated approximately 2.33 seconds, in contravention of SEPTA's policy requiring drivers to wait a full four seconds before entering an intersection. Additionally, she turns the wheel with one hand instead of two, while still holding the route paperwork. The victim was in the crosswalk for approximately 6.75 seconds before being struck and made it approximately 32 feet across the intersection. Officer Morrisey was able to determine this by examining the tire marks and body slide marks leading to the bus's final stop which indicated that [Appellant] applied the brakes after she struck the victim. The pedestrian had the right of way. Officer Morrisey testified that in his expert opinion, [Appellant] operated her bus in a reckless, careless and negligent manner, which caused the crash.

[Appellant] testified at trial. She testified that she had been driving for SEPTA for approximately 18 years. She had experience driving an articulating bus off and on for nine years. The day of the crash, she was shuttling passengers between Regional Rail stations. This was her first time on that route. At the end of her route, all passengers disembarked at Glenside station and she was required to travel down Glenside Avenue and make a left onto Limekiln Pike to get back on the route and return the bus to Midvale station. The designated route was outlined in the paperwork she can be seen reading in the surveillance video. She testified that when she reached the intersection, she looked at the corner and didn't see anyone so she began to read the instructions for the route. If she did not follow the designated route, she would be considered off-route, which could lead to termination. When the light turned green, she looked left, forward and right before moving to make sure there was no oncoming traffic. She did not see the victim at any point prior to moving. At the time of impact, she was travelling approximately 8 miles per hour. She testified that as a professional driver, especially of a tandem bus, there is a significant risk of hitting another vehicle or a pedestrian, causing damage or injury.

Following a bench trial, [Appellant] was convicted of Homicide by Vehicle, Careless Driving, Careless Driving—Unintentional Death,

Improper Movement and Failure to Signal. The Court found her not guilty of Improper Left Turn and Reckless Driving.

Trial Court Opinion, 5/29/18, at 1-5 (citations and footnotes omitted). On July 7, 2017, the trial court sentenced Appellant to five years' probation. Following sentencing, Appellant filed timely post-sentence motions, which the trial court denied. Appellant filed a timely notice of appeal, and both Appellant and the trial court complied with Pa.R.A.P. 1925. On February 3, 2020, over one dissent, a three-judge panel of this Court reversed Appellant's judgment of sentence for homicide by vehicle and remanded for resentencing on all other counts. The Commonwealth petitioned for *en banc* consideration by this Court. On April 1, 2020, we granted the petition.

Appellant raises the following three claims in this appeal.

1. The defendant [Appellant] was found not guilty of the predicate offense of reckless driving, and therefore, could not be found guilty of homicide by vehicle.

2. The evidence was insufficient to convict the defendant [Appellant] of homicide by vehicle.

3. The court committed error in allowing the Commonwealth's crash reconstruction expert to testify that defendant [Appellant] operated her bus in a reckless manner.

Appellant's Brief at 4-5.

Upon review, we conclude once again that the evidence was insufficient to convict Appellant of homicide by vehicle, and that we do not need to address Appellant's other issues.

In reviewing the sufficiency of the evidence, we must determine whether the evidence admitted at trial and all reasonable inferences drawn therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt. ***Commonwealth v. Diamond***, 83 A.3d 119, 126 (Pa. 2013). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." ***Commonwealth v. Colon-Plaza***, 136 A.3d 521, 525–26 (Pa. Super. 2016). It is within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence. ***Commonwealth v. Tejada***, 107 A.3d 788, 792–93 (Pa. Super. 2015). The Commonwealth may sustain its burden of proving every element of the crime by means of wholly circumstantial evidence. ***Commonwealth v. Crosley***, 180 A.3d 761, 767 (Pa. Super. 2018). As an appellate court, we may not re-weigh the evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Rogal***, 120 A.3d 994, 1001 (Pa. Super. 2015).

The Vehicle Code defines homicide by vehicle as follows:

> Any person who recklessly or with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth or municipal ordinance applying to the operation or use of a vehicle or to the regulation of traffic except section 3802 (relating to driving under influence of alcohol or controlled substance) is guilty of homicide by vehicle, a felony of the third degree, when the violation is the cause of death.

75 Pa.C.S.A. § 3732(a). To prove this offense, the Commonwealth must prove beyond a reasonable doubt that (1) the defendant violated a Pennsylvania statute (except the DUI statute[2]) or municipal ordinance relating to operation or use of a vehicle or regulation of traffic, (2) the violation caused the victim's death, and (3) the defendant's conduct was either reckless or grossly negligent.

The evidence, viewed in the light most favorable to the Commonwealth, satisfies the first element, violation of a provision of the Vehicle Code. Appellant violated multiple Vehicle Code provisions, including failure to yield the right of way (75 Pa.C.S.A. § 3112), improper turning movement (75 Pa.C.S.A. § 3334) and two subsections of the careless driving statute (75 Pa.C.S.A. § 3714).

Section 3112, relating to traffic-control signals, provides in relevant part:

> Vehicular traffic facing a green arrow signal, shown alone or in combination with another indication, may enter the intersection only to make the movement indicated by the arrow, or such other movement as is permitted by other indications shown at the same time. Such vehicular traffic shall yield the right-of-way to pedestrians lawfully within an adjacent crosswalk and to other traffic lawfully using the intersection.

---

[2] Homicide by vehicle while the defendant is intoxicated is the subject of a separate criminal statute, 75 Pa.C.S.A. § 3735 (**Homicide by vehicle while driving under influence**).

75 Pa.C.S.A. § 3112(a)(1)(ii). At the time of the collision, the victim was crossing the street in a lawfully designated crosswalk. As Appellant made a left-hand turn onto this street, she was required to yield the right-of-way to the victim. She failed to do so, thus violating this provision.

The improper movement statute provides in relevant part: "Upon a roadway no person shall turn a vehicle or move from one traffic lane to another . . . unless and until the movement can be made with reasonable safety nor without giving an appropriate signal in the manner provided in this section." 75 Pa.C.S.A. § 3334(a). Appellant failed to turn her vehicle with reasonable safety by making a left-hand turn without yielding to the victim in the adjacent crosswalk, a violation of this statute.

The careless driving statute provides in relevant part:

**(a) General rule.**--Any person who drives a vehicle in careless disregard for the safety of persons or property is guilty of careless driving, a summary offense.

**(b) Unintentional death.**--If the person who violates this section unintentionally causes the death of another person as a result of the violation, the person shall, upon conviction, be sentenced to pay a fine of $500.

75 Pa.C.S.A. § 3714. "The *mens rea* requirement applicable to Section 3714, careless disregard, implies less than willful or wanton conduct but more than ordinary negligence or the mere absence of care under the circumstances." *Commonwealth v. Gezovich*, 7 A.3d 300, 301 (Pa. Super. 2010) (internal quotations and citations omitted).

The evidence satisfies Section 3714(a) and (b). Appellant had an unobstructed view of the intersection for at least 45 seconds before beginning to turn her vehicle. Nevertheless, she failed to notice the victim before commencing her left turn into the crosswalk because she was preoccupied with reading paperwork while stopped when the traffic light was red. By striking and killing the victim, she drove her vehicle in careless disregard for the victim's safety and, in so doing, unintentionally caused the victim's death.

Appellant's violation of multiple provisions of the Vehicle Code satisfies the first element of homicide by vehicle.

The second element of homicide by vehicle requires proof that the Vehicle Code violation caused the victim's death. Causation occurs when the Motor Vehicle Code violation is a direct and substantial factor in the victim's death, and the fatal result is not extraordinary or remote. ***Commonwealth v. Rementer***, 598 A.2d 1300, 1306 (Pa. Super. 1991). The evidence satisfies this element because a direct and substantial nexus exists between Appellant's traffic violations and the fatal collision.

The third and final element of homicide by vehicle requires proof that Appellant was either reckless or grossly negligent. We begin our analysis by explaining that recklessness and gross negligence are equivalent states of mind under the homicide by vehicle statute. This determination is consistent with our Supreme Court's construction of the involuntary manslaughter statute, 18 Pa.C.S.A. § 2504, in ***Commonwealth v. Huggins***, 836 A.2d 862

(Pa. 2003), and with prior panel decisions of this Court interpreting the homicide by vehicle statute.

The defendant in **Huggins** was charged with involuntary manslaughter and other charges when he fell asleep at the wheel of his speeding fifteen-passenger van, which was overloaded with twenty-one children and three adults, leading to a collision on the highway and the deaths of two children. The involuntary manslaughter statute requires proof that the defendant, "as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner . . . causes the death of another person," 18 Pa.C.S.A. § 2504(a), the same dual *mens rea* elements included in the homicide by vehicle statute.

The trial court in **Huggins** granted the defendant's request for habeas corpus relief and dismissed the involuntary manslaughter charge. The Commonwealth appealed to this Court, which affirmed, and the Supreme Court granted the Commonwealth's petition for allowance of appeal.

The Supreme Court rejected the defendant's argument that "some heightened form of recklessness" is required for the Commonwealth to prove involuntary manslaughter. **Id.**, 836 A.2d at 868. "The plain language of Section 2504," the Court said, "suggests no such heightened requirement." **Id.** Instead, the Crimes Code's general definition of "reckless" in 18 Pa.C.S.A. § 302 applied to involuntary manslaughter. **Id.** The Court recited the general

definition that a person acts "recklessly" with respect to a material element of an offense

> when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

*Id.* at 868-69 (citing 18 Pa.C.S.A. § 302(b)(3)).

Gross negligence, the Court continued, requires more than the general definition of "negligence" in Section 302.[3] "If the General Assembly had intended for Section 302 negligence to be sufficient to establish the *mens reas* necessary for involuntary manslaughter," the Court reasoned, "it need not have added the modifier 'gross.'" *Id.* at 867. But while more than ordinary negligence is required, gross negligence does not fall between ordinary criminal negligence and recklessness. *Id.* at 867-68. Instead, "reckless" and "grossly negligent" "defin[e] the equivalent state of mind for purposes of the involuntary manslaughter statute." *Id.* at 868. Although, as a theoretical matter, it could be posited that gross negligence occupied some middle ground

---

[3] *See* 18 Pa.C.S.A. § 302(b)(4) ("[a] person acts negligently with respect to a material element of an offense when he should be aware of a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that the actor's failure to perceive it, considering the nature and intent of his conduct and the circumstances known to him, involves a gross deviation from the standard of care that a reasonable person would observe in the actor's situation").

between ordinary negligence and recklessness, there were "sound reasons" for deeming gross negligence equivalent to recklessness:

> First, the General Assembly did not separately define the concept of gross negligence either in the involuntary manslaughter statute itself or in the default provisions of the Crimes Code setting forth general requirements of culpability. If we were to recognize the theoretical distinction posed, there would be no statutory guidance as to the contours of this additional basis for the imposition of criminal liability. Given the requirement that penal statutes be strictly construed, 1 Pa.C.S.[A.] § 1928(b)(1); ***Commonwealth v. Tate***, 572 Pa. 411, 816 A.2d 1097, 1098 (2003), this Court cannot devise an extra-statutory basis for criminal liability. Furthermore, it is significant that although the General Assembly employed a disjunctive here (reckless or grossly negligent), it did not establish a different consequence attending a finding of "grossly negligent involuntary manslaughter" versus "reckless involuntary manslaughter." Rather, the offense is generally graded as a misdemeanor of the first degree, with an enhancement to felony grading only if the victim was under twelve years of age and was in the care, custody or control of the defendant. 18 Pa.C.S.[A.] § 2504(b).

***Id.***

Like the involuntary manslaughter statute, the homicide by vehicle statute, 75 Pa.C.S.A. § 3732(a), requires proof of recklessness or gross negligence. Three-judge panels of this Court have held multiple times that ***Huggins'*** construction of recklessness and gross negligence under the involuntary manslaughter statute applies with equal force to the homicide by vehicle statute. ***See Commonwealth v. Grimes***, 842 A.2d 432, 434 (Pa. Super. 2004) (citing ***Huggins***) ("[e]xtant case law makes clear gross negligence is not the equivalent of criminal negligence as defined in 18 Pa.C.S.A. § 302(b)(4) but rather the concept of gross negligence is

- 11 -

encompassed within the concept of recklessness as set forth in Section 302(b)(3)"); *see also Commonwealth v. Bostian*, 232 A.3d 898, 909-10 (Pa. Super. 2020); *Commonwealth v. Matroni*, 923 A.2d 444, 448 (Pa. Super. 2007).

In accordance with these authorities, we agree that recklessness and gross negligence are equivalent under the homicide by vehicle statute. Our rationale for this decision is similar to the Supreme Court's analysis of the involuntary manslaughter statute in *Huggins*. First, the legislature does not prescribe a different penalty for "grossly negligent homicide by vehicle" than for "reckless homicide by vehicle." In both instances, the offense constitutes a third-degree felony. In addition, the legislature does not define gross negligence in the homicide by vehicle statute or in 18 Pa.C.S.A. § 302, the default provision of the Crimes Code that defines general standards of culpability. Thus, no statutory guidance exists for defining gross negligence differently from recklessness.

Since recklessness and gross negligence are equivalent, our task then is to apply well-settled principles of recklessness to the evidence. Recklessness "implicates knowledge in two ways: (1) the actor must consciously (*i.e.*, with knowledge) disregard a substantial and unjustifiable risk; and (2) the risk that the actor disregards is measured by the circumstances known to the actor." *Commonwealth v. Sittler*, 144 A.3d 156, 164 (Pa. Super. 2016). "Conscious disregard" of a risk, in turn, "involves

- 12 -

first becoming aware of the risk and then choosing to proceed in spite of the risk." ***Commonwealth v. Huggins***, 836 A.2d 862, 865 (Pa. 2003); ***see also Commonwealth v. Vogelsong***, 90 A.3d 717, 719 (Pa. Super. 2014) (recklessness requires conscious action or inaction that creates substantial risk of harm to others, whereas negligence suggests unconscious inadvertence). In other words, to be guilty of reckless driving, a person must be aware that there exists a substantial risk that injury will result from his driving and yet continue to drive in such a manner, thus callously disregarding the risk created by his own reckless driving. ***Commonwealth v. Bullick***, 830 A.2d 998, 1003 (Pa. Super. 2003).

As these definitions make clear, homicide by vehicle does not apply to most vehicle fatalities, tragic though they all are. To lose sight of this truth is to risk blurring the lines of criminal liability based upon ordinary negligence and recklessness.

Viewing the evidence admitted at trial and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, we hold that the evidence fails to prove that Appellant acted recklessly. The evidence simply does not support a finding that Appellant was conscious that her driving created a substantial and unjustifiable risk of injury, but that she nonetheless proceeded to drive in a reckless manner.

On the day of the fatal accident, Appellant was not driving her usual route. Fearing she would be terminated if she went off-route, Appellant picked

up and looked at papers to ascertain her designated route as she was stopped at the traffic light. Her lack of attentiveness caused her to overshoot the stop bar and come to rest in the crosswalk. Officer Morrissey, the investigating officer and crash reconstruction expert, opined that by stopping over the white stop line in the crosswalk, Appellant may not have been able to see the victim on the diagonal corner waiting to cross. While Appellant claimed not to have seen the victim until after she hit him, she had ample opportunity to observe him while stopped for 45 seconds at the intersection. The bus's surveillance video demonstrates that the victim was visible on the opposite corner and no other pedestrians or traffic would have obstructed Appellant's view of the victim. When the light turned green, SEPTA regulations required Appellant to check for pedestrians and scan the intersection for four seconds before making the left turn. She violated this regulation by turning after 2.33 seconds. While turning, she violated another SEPTA regulation by not gripping the steering wheel with both hands. She rested the palm of one hand on the wheel and held the route paperwork in her other hand. The victim was in the crosswalk for approximately 6.75 seconds and was approximately 32 feet across the intersection when he was struck. The bus was moving at approximately eight miles per hour at impact. Officer Morrissey testified that no mechanical defects or failures caused the collision. He also excluded speed, weather, roadway conditions, glare and obstruction of vision as possible contributors to the crash. The victim was legally within the crosswalk and remained clearly

visible as Appellant made the turn. Appellant testified that when the light turned green, she looked left, forward, and right before moving, to make sure there was no oncoming traffic. She simply did not see the victim at any point before moving.

As a matter of law, this evidence constitutes careless driving (less than willful or wanton conduct but more than ordinary negligence) but not recklessness (or gross negligence). Absent from this case is any evidence that Appellant was consciously aware of a substantial and unjustifiable risk created by her conduct that would cause injury to the victim. Appellant stopped the bus at a red light, albeit past the stop bar, and remained stationary for slightly over two seconds after the traffic light turned green before proceeding into the intersection, too short a time under SEPTA regulations, but not a conscious disregard of a substantial and unjustifiable risk. The third element of homicide by vehicle is not satisfied.

Had Appellant's bus barreled through the red light without stopping, that would have been a conscious disregard of a substantial and unjustifiable risk, the essence of recklessness. ***See Moyer***, 171 A.3d at 854 (evidence demonstrated conscious disregard of substantial and unjustified risk of fatal accident in prosecution for homicide by vehicle, where defendant drove past stop sign going twelve miles per hour, stop sign preceded busy street, building obscured view of one lane of cross traffic, and defendant was familiar with intersection, so she knew it was busy street with obscured view).

Alternatively, had Appellant been speeding, tailgating, erratically changing lanes, crossing double yellow lines, or racing another vehicle at the time of the collision, we would readily find recklessness, as we have in prior decisions. *See Matroni*, 923 A.2d at 448 (homicide by vehicle conviction affirmed where defendant was speeding, tailgating and erratically changing lanes); *Commonwealth v. Grimes*, 842 A.2d 432, 433 (Pa. Super. 2004) (defendant crossed center line into victim's lane and struck victim's car); *Commonwealth v. Bowser*, 624 A.2d 125, 129 (Pa. Super. 1993) (defendant crossed double yellow lines); *Commonwealth v. Jackson*, 744 A.2d 271, 274 (Pa. Super. 1999) (high speed race with another vehicle). Appellant's misconduct was not nearly as egregious. In contrast, Appellant **stopped the bus** at a red light for 45 seconds **and then waited** an additional 2.33 seconds after the light turned green. Her failure to wait the full four seconds required under SEPTA regulations came nowhere close to the shocking behavior in *Moyer* and the other decisions summarized above. While it is true that Appellant did not step on her brakes until after the collision, this was simply because she did not see the victim. At most, her conduct constituted ordinary criminal negligence, not the conscious disregard of a substantial risk required for recklessness. *See Commonwealth v. Heck*, 491 A.2d 212 (Pa. Super. 1985) (while both criminal negligence and recklessness involve "gross" deviations from reasonable conduct, recklessness

includes conscious disregard of risk whereas criminal negligence is accompanied by lack of awareness of risk).

Our reasoning in **Commonwealth v. Gilliland**, 422 A.2d 206 (Pa. Super. 1980), provides analogous support for today's decision. The defendant in **Gilliland** was convicted of involuntary manslaughter and recklessly endangering another person as a result of a boating accident. The accident occurred at night while the defendant and his family were boating on a lake. Due to impending darkness, the defendant proceeded on the lake at approximately 20 to 25 miles per hour. The decedent was in another boat with his family and saw the defendant approaching from a substantial distance. A few moments before impact, occupants on the decedent's boat screamed at the decedent to move his boat, but he did not blow his horn or move out of the defendant's path. Immediately before impact, both boats veered in the same direction. The boats collided. The defendant stated that he did not see the decedent's boat in a sufficient amount of time to prevent the collision. We held that this evidence did not rise to the level of recklessness or gross negligence necessary to sustain the defendant's convictions.

> Although the appellant's failure to observe the [decedent's] vehicle in sufficient time to avoid the collision is clearly a deviation from the standard of reasonable care, it does not rise to the level of gross negligence necessary to sustain a criminal conviction. The appellant simply failed to see the boat which the decedent was driving. **There was no conscious realization of a substantial risk which was subsequently disregarded, but**

**rather a general lack of awareness of the situation on the part of the appellant**.

*Id.*, 422 A.2d at 207 (emphasis added). The same holds true here. There is no evidence that Appellant consciously was aware of a substantial risk that she disregarded. She simply did not see the victim and only displayed a general lack of awareness of the situation.

The Commonwealth contends that Appellant should have seen the victim during the 45 seconds that the bus was stopped at the red light, but Appellant failed to notice him because she was reading documents. It might be reckless for a driver to read while her vehicle is in motion, but not here, when Appellant was stopped at a red light. Moreover, Appellant was not reading for pleasure but for a legitimate, work-related reason, specifically to determine whether her bus was on the proper route. If the Commonwealth's argument is taken to its logical extreme, we would label any reading while stopped in traffic, including checking one's GPS, as reckless. We decline to take that step.

The Commonwealth further observes that when the bus moved, Appellant violated SEPTA's requirement to keep both hands on the wheel by clutching the documents in one hand and resting the palm of her other hand on the steering wheel. The evidence does not suggest, however, that turning the steering wheel with one hand caused loss of control over the bus or the accident itself. At most, this rule violation constituted negligence but not a conscious disregard of a substantial and unjustifiable risk that led to the victim's death.

We acknowledge that Appellant was fully aware that SEPTA's safety regulations required bus drivers to stop and look for a full four seconds before making a left turn. Appellant's knowledge of this rule, however, does not give rise to criminal liability for homicide by vehicle. **Every** motor vehicle driver—bus, truck, car and motorcycle—knows there is a risk of hitting a pedestrian while driving a motor vehicle and knows she must look carefully before turning into an intersection to reduce the risk of striking a pedestrian, yet failure to follow these principles does not automatically constitute homicide by vehicle. Our precedents make clear that this crime requires something more egregious. Prosecuting drivers simply for violating a rule to stop and look for a given period of time before turning would blur the line between negligent failure to follow the rules of the road and the conscious disregard of risk punished under criminal law as recklessness.

We also note that among the reasons given by the trial court for finding Appellant guilty of homicide by vehicle was its conclusion that she grossly deviated from the standard of care for a similarly situated bus driver. We need not address the standard of care for a professional bus driver under the facts of this case, since we have concluded there was no evidence Appellant was consciously aware of a substantial and unjustifiable risk created by her conduct that would have caused injury to the victim.

Singly or in combination under the totality of the circumstances, and without minimizing the seriousness of Appellant's actions, her errors do not

satisfy the element of recklessness or gross negligence. We reach this decision solely by evaluating the sufficiency of the evidence in a light most favorable to the Commonwealth in relation to the homicide by vehicle statute and relevant appellate decisions. We agree with the trial court's verdict of careless driving. At the same time, however, we recognize that the legislature has erected a firm boundary between careless driving and the reckless or grossly negligent conduct required for homicide by vehicle. Appellant did not cross this line.

Because we reverse Appellant's conviction for homicide by vehicle, we remand for resentencing on all remaining convictions to give the trial court the opportunity to restructure its entire sentencing scheme. ***Commonwealth v. Goldhammer***, 517 A.2d 1280, 1283–84 (Pa. 1986); ***Commonwealth v. Williams***, 871 A.2d 254, 266 (Pa. Super. 2005) (if trial court errs in its sentence on one count in a multi-count case, all sentences for all counts will be vacated so court can restructure its entire sentencing scheme).

Judgment of sentence on homicide by vehicle reversed. Case remanded for resentencing on all remaining convictions. Jurisdiction relinquished.

President Judge Emeritus Bender, Judge Lazarus, Judge Dubow, Judge Nichols, and Judge King join this Opinion.

Judge McLaughlin files a Dissenting Opinion in which President Judge Panella and Judge Murray join.

- 20 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/16/2021